# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔊𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔦𝔵𝔱𝔥 𝔊𝔦𝔯𝔠𝔲𝔦𝔱
### CASE NO. 24-5649

HOLLY LAWSON

*Plaintiff/Appellant*

v.

KAYLA CREELY, Individually; LORI FRANKE, Individually; MARK KOPP, in his individual and official capacity; FRANKLIN COUNTY, KY BOARD OF EDUCATION

*Defendants*

_____

Appeal from the U.S. District Court, Eastern District of Kentucky, 3:22-cv-00023
_____

## PLAINTIFF'S/APPELLANT'S BRIEF

_____

Christopher Wiest (KY 90725)
Theodore J. Roberts (KY 100610)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
Tel:   513/257-1895
chris@cwiestlaw.com

Thomas B. Bruns (KY 84985)
Bruns Connell Vollmar & Armstrong
4555 Lake Forrest Drive, Suite 330
Cincinnati, Ohio 45242
Tel.:   513/312-9890
tbruns@bcvalaw.com

*Counsel for Plaintiff/Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, Plaintiff/Appellant ("Plaintiff") is not a subsidiary or affiliate of a publicly owned corporation.  There is no publicly owned corporation, not a party to the appeal, which has a financial interest in the outcome.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**……………….…………………i

**TABLE OF AUTHORITIES**……………………………………………….iv

**STATEMENT CONCERNING ORAL ARGUMENT**………..……………...viii

**JURISDICTIONAL STATEMENT**…………………………………………..1

**STATEMENT OF THE ISSUES**…………………………………………...1

**INTRODUCTION**………………………………………………………...1

**STATEMENT OF THE CASE AND FACTS**…………………………………...3

   A.  The warrantless search of Holly's purse on May 4, 2021……………………3

   B.  The events of May 5, 2021…………………………………………11

   C.  Procedural History and District Court Opinion…………………………13

**SUMMARY OF THE ARGUMENT**………………………………………...14

**STANDARD OF REVIEW**…………………………………………………...14

**ARGUMENT**………………………………………………………………15

   **I.**  **The District Court improperly granted summary judgment to Creely and Franke on the basis of qualified immunity, and improperly denied it to Ms. Lawson.......................................................................15**

      **A. The District Court correctly determined Creely and Franke were acting under color of law...................................16**

      **B. The District Court correctly determined Creely and Franke violated Ms. Lawson's Fourth Amendment rights....................21**

C. The District Court erred in finding Creely and Franke were entitled to summary judgment on the basis of qualified immunity...............................................................................24

II. The District Court improperly granted summary judgment to the Board and Kopp and denying summary judgment to Ms. Lawson on her claims against the Board and Kopp................................................27

A. The District Court erred in analyzing the seizure, detention, and questioning of Ms. Lawson on May 5, 2021, by Kopp and law enforcement, under the framework of a *Terry* stop, versus a custodial interview................................................................27

B. The District Court erred in finding the Board not liable under *Monell* for the actions of Creely and Franke.............................32

1. The purse search was conducted, in the alternative, as a result of the Board's failure to train Defendants Creely and Franke.........................................................................32

2. The purse search was conducted pursuant to Board policy, and/or was authorized by Board policy, thus the Board is liable under *Monell*.............................................................34

C. The Board is liable for the actions and custodial detention of May 5, 2021 under *Monell*.............................................................38

D. Kopp is not entitled to qualified immunity, qualified immunity does not apply to injunctive relief claims, and Ms. Lawson established as a matter of law that she was entitled to reinstatement.......................................................................................39

E. The Board is not immune under the Eleventh Amendment......40

CONCLUSION…………………………………………………………..42

CERTIFICATE OF SERVICE……………………………………………44

CERTIFICATE OF COMPLIANCE…………………………………..44

APPENDIX -- DESIGNATION OF THE DISTRICT COURT RECORD…....i

# TABLE OF AUTHORITIES

**Cases**

*A.M. v. Jefferson Cnty. Bd. of Educ.*,
   2022 U.S. Dist. LEXIS 14034 (WDKY 2022)....................................................41

*Adkins v. Board of Educ.*, 982 F.2d 952, 957 (6th Cir. 1993)............................37, 38

*American Postal Workers Union, etc. v. United States Postal Service*,
   871 F.2d 556 (6th Cir. 1989)..................................................................23, 26

*Berry v. Delaware County Sheriff's Office*,
   796 Fed.Appx. 857 (6th Cir. 2019)................................................................33

*Blackburn v. Floyd County Bd. of Educ.*, 749 F. Supp. 159 (E.D. Ky. 1990).........41

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
   531 U.S. 288 (2001)..........................................................................16, 20

*Brown v. Chapman*, 814 F.3d 447 (6th Cir. 2016)................................................33

*Brown v. Shaner*, 172 F.3d 927 (6th Cir. 1999).............................................33, 38

*California v. Beheler*, 463 U.S. 1121 (1983).........................................................28

*Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523 (1967)........................21

*Cimerman v. Cook*, 561 Fed. Appx. 447 (6th Cir. 2014).......................................39

*City of Canton, Ohio v. Harris,* 489 U.S. 278 (1989)...........................................38

*Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014).............................................39

*Cunningham v. Grayson*, 541 F.2d 538 (6th Cir. 1976)........................................41

*Dean v. Byerley,* 354 F.3d 540 (6th Cir. 2004)....................................................16

*Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996)..................................17, 19

*Doe v. Knox County Bd. of Educ.*, 918 F. Supp. 181 (E.D. Ky. 1996)..................41

*Dunaway v. New York*, 442 U.S. 200 (1979).........................................................27

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005).......................................................41

*Ex parte Young*, 209 U.S. 123 (1908)....................................................................39

*Fayette County Bd. of Educ. v. Maner*,
2009 Ky. App. Unpub. LEXIS 234 (Ct. App. May 22, 2009)............................42

*Florence v. Harrison Cty. Bd. of Educ.*,
2005 U.S. Dist. LEXIS 54391 (KYED 2005)......................................................42

*Florida v. Royer*, 460 U.S. 491 (1983)..........................................................29

*Garcia v. Dykstra*, 260 Fed. Appx. 887 (6th Cir. 2008)...........................................26

*Gardner v. Broderick*, 392 U.S. 273 (1968).................................................32, 39

*Green v. Nicholas Cnty. Sch. Dist.*, 756 F. Supp. 2d 828 (E.D. Ky. 2010)..............41

*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994)....................40, 41

*Hope v. Pelzer*, 536 U.S. 730 (2002)...........................................................15, 25

*Howes v. Fields*, 565 U.S. 499 (2012)..........................................................31, 39

*James v. Hampton*, 592 Fed. Appx. 449 (6th Cir. 2015).................................23, 26

*Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824 (Ky. 2004)....................42

*Katz v. United States*, 389 U.S. 347 (1967)............................................21, 22, 26

*Kent v. Oakland County*, 810 F.3d 384 (6th Cir. 2016).......................................15, 25

*Kyllo v. United States*, 533 U.S. 27 (2001)........................................................25

*Leventhal v. Knapek*, 266 F.3d 64 (2d Cir. 2001).........................................23, 26

*Li v. Revere Loc. Sch. Dist.*, 2023 U.S. App. LEXIS 11284 (6th Cir. 2023)..........40

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982)........................................16, 20

*Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977)....................40

*McKnight v. Rees*, 88 F.3d 417 (6th Cir. 1996)........................................................14

*Meredith v. Jefferson County Bd. of Educ.*,
2007 U.S. Dist. LEXIS 83461 (WDKY 2007)...............................................41, 42

*Monistere v. City of Memphis*, 115 Fed. Appx. 845 (6th Cir. 2004).................37, 38

*Monroe v. Pape*, 365 U.S. 167 (1961)..................................................................18

*O'Connor v. Ortega*, 480 U.S. 709 (1987)...................................................22, 23, 26

*Pearson v. Callahan*, 555 U.S. 223 (2009)........................................................15, 24

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997)........................................41

*Roell v. Hamilton County Ohio/Hamilton County Board of County Commissioners*, 870 F.3d 471 (6th Cir. 2017)........................................33

*Saucier v. Katz*, 533 U.S. 194 (2001)................................................................15, 24

*Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328 (9th Cir. 1987).....23, 26

*Shealy v. Caldwell*, 16 Fed. Appx. 388 (6th Cir. 2001)........................22, 23, 26, 32

*Tarter v. Raybuck*, 742 F.2d 977 (6th Cir. 1984)..............................................31, 39

*Taylor v. Riojas*, 141 S. Ct. 52 (2020)....................................................................15

*Tolliver v. Harlan County Bd. of Educ.*, 887 F. Supp. 144 (E.D. Ky. 1995)..........41

*Turker v. Ohio Dep't of Rehabilitation & Corrections*, 157 F.3d 453 (6th Cir. 1998)........................................................................39, 40

*United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464 (6th Cir. 2014)......24

*United States v. Classic*, 313 U.S. 325 (1941)........................................................19

*United States v. Forness*, 125 F.3d 928 (2d Cir. 1942)...........................................27

*United States v. Fortney*, 772 Fed. Appx. 269 (6th Cir. 2019)..........................20, 32

*United States v. Hinojosa*, 606 F.3d 875 (6th Cir. 2010)..................................30, 39

*United States v. Jeffers*, 342 U.S. 48 (1951)................................................21, 22, 26

*United States v. Jenkins*, 92 F.3d 430 (6th Cir. 1996).............................................21

*United States v. Lanier*, 73 F.3d 1380 (6th Cir. 1996)......................................16, 19

*United States v. Lopez-Arias*, 344 F.3d 623 (6th Cir. 2003)...................................29

*United States v. Luck*, 852 F.3d 615 (6th Cir. 2017)..........................................29, 39

*United States v. Martinez*, 795 F. App'x 367 (6th Cir. 2019)............................31, 39

*United States v. McClendon*, 86 Fed. Appx. 92 (6th Cir. 2004).......................22, 26

*United States v. Jacobsen*, 466 U.S. 109 (1984)....................................................25

*United States v. Panak*, 552 F.3d 462 (6th Cir. 2009).......................29, 31, 32, 39

*United States v. Perez*, 440 F.3d 363 (6th Cir. 2006)...............................................28

*United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996)............................................21

*United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998)..................................27, 30, 39

*United States v. Slanina*, 283 F.3d 670 (5th Cir. 2002)....................................23, 26

*United States v. Smith*, 594 F.3d 530 (6th Cir. 2010................................................28

*United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991)......................................23, 26

*United States v. Waller*, 426 F.3d 838 (6th Cir. 2005)......................................22, 26

*United States v. Zabel*, 35 F.4th 493 (6th Cir. 2022).........................................31, 39

*West v. Atkins*, 487 U.S. 42 (1988)........................................................................17

*Waters v. City of Morristown*, 242 F.3d 353 (6th Cir. 2001)...............16, 18, 19, 20

*West v. Atkins*, 487 U.S. 42 (1988)..................................................................16, 17

*Williams v. Mehra*, 186 F.3d 685 (6th Cir. 1999).................................................14

*Wilson v. Layne*, 526 U.S. 603 (1999)............................................................15, 25

*Wilson v. Webb*, 2000 U.S. App. LEXIS 23585 (6th Cir. 2000).......................17, 19

**Statutes**

18 U.S.C. § 242.......................................................................................................17

28 U.S.C. §1291........................................................................................................1

28 U.S.C. §1331........................................................................................................1

42 U.S.C. § 1983............................................................................................3, 16, 42

**Constitutional Amendments**

U.S. Const. amend. IV.............................................................................................21

**Rules**

Fed. R. Civ. P. 52....................................................................................................27

## STATEMENT CONCERNING ORAL ARGUMENT

This case raises important issues regarding violations of Fourth Amendment rights and qualified immunity.  As such, this case presents important issues for this Court, oral argument is warranted, and Plaintiff respectfully requests oral argument in this matter.

## JURISDICTIONAL STATEMENT

The District Court had federal question jurisdiction over Plaintiff's/ Appellant's ("Plaintiff" and/or "Ms. Lawson") federal constitutional claims under 28 U.S.C. §1331.  On June 16, 2024, the District Court granted summary judgment to Defendants and entered final judgment on their behalf.  [Opinion, Doc. 95, PageID#2011-2044; Judgment, Doc. 96, PageID#2045].  A timely notice of appeal was filed on July 11, 2024.  [Notice of Appeal, DE#18, PageID#219].  Accordingly, this Court has jurisdiction over Plaintiff's appeal under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

This appeal presents the following questions:

(1)    Did the District Court err in granting summary judgment to Kayla Creely and Lori Franke, and denying summary judgment in favor of Ms. Lawson as to her claims against them?

(2)    Did the District Court err in granting summary judgment to Mark Kopp and the Franklin County, Kentucky Board of Education on the issue of liability (including her request for reinstatement), and denying summary judgment to Ms. Lawson on those same claims?

## INTRODUCTION

Ms. Lawson was a guidance counselor at Franklin County High School ("High School") employed by the Franklin County, Kentucky Board of Education

("Board"). Two of her co-workers Kayla Creely ("Creely") and Lori Franke ("Franke"), both public employees, without her authority, warrant, or consent, entered her locked office because they thought Ms. Lawson possibly was on medication making her act strangely, and they rifled through her closed purse to see what medication they could find. In doing so, they discovered a handgun Ms. Lawson forgot had been in her purse, as she had it in her purse over the weekend. In entering Ms. Lawson's locked office and rifling her purse without a warrant, Creely and Franke acted pursuant to Board policy that gave them the right, among other authority, to take actions to protect the health and safety of others.

Ultimately, Creely and Franke, who were required to do so, reported their discovery of the gun to law enforcement, who involved the Superintendent, Mark Kopp ("Kopp"). That night, Kopp developed a plan which he executed the next day. When Ms. Lawson arrived at school the next day, Kopp met her at the door to the High School, escorted her into the school and into the office of the school resource officer, closed the door, blocked her ability to exit, never told her she was free to leave, and in the presence of two uniformed law enforcement officers who were present because Kopp wanted a show of force, proceeded to interrogate her. In response to Kopp's prompting, Ms. Lawson looked into her purse, found the handgun, and disclosed it. As a result, she was forced to resign and she was criminally charged, although eventually the criminal charge was "no billed."

2

Ms. Lawson then brought suit under 42 U.S.C. § 1983 for violations of the Constitution.

## STATEMENT OF THE CASE AND FACTS

Much of the evidence below is undisputed, and we have noted the few disputes of fact where they exist such that the facts favorable to Ms. Lawson are emphasized (even then, none of the disputed facts are material).

### A. The warrantless search of Holly's purse on May 4, 2021

Creely was the freshman guidance counselor at the High School from July 1, 2019 to July 1, 2021. (Depo. Creely, Doc. 38, 9-10, PageID#691-692). Her position was certified (*Id.* at 11, Ex. 2, Doc. 38-2, PageID#693, 784), and she had various duties. (*Id.* at 11-12, Ex. 3, Doc. 38-3, PageID#693-694, 785-786). During her tenure, Creely had a limited contract for employment with the Board. (*Id.* at 13-15, 58-59, Exhibit 5, Doc. 38-5, Exhibit 5C, Doc. 38-8, PageID#695-697, 793-794, 799-800). Generally speaking, Creely's duties were broad, and included any duties required by statute, or Board policy. (*Id.*). Employees, including Creely, had a duty to report criminal activities (*Id.* at 90, Exhibit 15, Doc. 38-17, PageID#772, 826-827), and a duty to take reasonable measures to protect the health, safety, and well-being of others within the school. (*Id.* at 91-92, PageID#773-774).

Franke was the school registrar for the High School from approximately 2000 until retirement in November, 2021. (Depo. Franke, Doc. 39, at 5-6, PageID#836-

837).  Franke's duties included answering phones, greeting students, withdrawing and enrolling students, and assisting with "other things."  (*Id.* at 6-7, PageID#837-838).  Those "other things" included keeping track of her coworkers in case students or other staff members were looking for them.  (*Id.* at 28, PageID#859).  Franke was a classified employee within the school system.  (*Id.* at 9-10, PageID#840-841).  Franke's employment also was governed by a contract of employment, that included compliance with Board policies and procedures.  (*Id*. at 10-12, Exhibits 1-2, Doc. 39-1, Doc. 39-2, PageID#841-843, 908-909, 910-911).  Franke's duties also included the duty to report criminal activities.  (*Id.* at 72-73, Exhibit 15, PageID#903-904, Doc. 38-17, PageID#827-828).  And her duties also included the duty to take reasonable measures to protect the health, safety, and well-being of others within the school.  (*Id.* at 73, PageID#904).

From a Board policy and procedure standpoint, employees were required to report drug or alcohol issues on school grounds to law enforcement.  (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 12-13, 86-87, Exhibits 6-7, Doc. 36-7, Doc. 36-8, PageID#361-362, 435-436, 559-561, 562-563).  Employees were required to report any unsafe working conditions to the Superintendent.  (*Id.* at 15-16, 86-87, Exhibit 9, Doc. 36-10, PageID#364-365, 435-436, 566-568).  And the Board had a "no tolerance" weapons policy that included the authority to search

4

belongings.  (*Id.* at 17-18, 86-87, Exhibit 10B, Doc. 36-12, PageID#366-367, 435-436, 571-573).

The Board also had a policy that required "all employees to use sound judgment in the performance of their duties and take reasonable measures to protect the health, safety, and wellbeing of others as well as district property."  (*Id.* at 24-25, 86-87, Exhibit 11, Doc. 36-14, Exhibit 12, Doc. 36-15, PageID#373-374, 435-436, 577).  Critically, what constituted an appropriate "reasonable measure" under this broad policy was largely left to the discretion of the employee, and the High School offered no training on this policy.  (*Id.* at 166-169, Exhibits 11, Doc. 36-14, and 12, Doc. 36-15, PageID#515-518, 576, 577).  The policy was so open-ended that Board representatives were unable to answer whether this policy authorized the search of an employee's purse if drug usage concerns arose.  (*Id.* at 25, 86-87, PageID#374, 435-436).  Likewise, the employee handbook confirmed the general, broad authority of staff to take undefined measures regarding weapons, and to take broad measures to "protect the health, safety, and wellbeing of others as well as district property."  (*Id.* at 26-27, 29, 88-89, Exhibit 14, Doc. 36-17, PageID#375-376, 378, 437-438, 579-586).

Creely and Franke physically worked in the guidance office, which was located upstairs at the High School and was not accessible or viewable from the outside of the building.  (Depo. Creely, Doc. 38, at 16-17, PageID#698-699).  Sign-

ins were required for access to the school, and the front doors of the building were locked to the public. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 50-52, PageID#399-401; Depo. Creely, Doc. 38, at 42-43, PageID#724-725). As far as the guidance suite, it had two doors with locks on each, one of them was locked all the time, and the other main door was open during the day. (Depo. Creely, Doc. 38, at 18-19, PageID#700-701).

The only personnel who had keys to the guidance suite were the counselors (including Creely), Franke, custodial staff, and principals. (Depo. Creely, Doc. 38, at 18-20, PageID#700-702; Depo. Franke, Doc. 39, at 16-17, PageID#846-847; Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 52-56, PageID#401-405). Custodians did not access the guidance suite during the day, and principals would only stop by once or twice per week. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 52-56, PageID#401-405). And, Creely and Franke only possessed keys to the guidance suite as a result of the official positions held by them. (Depo. Creely, Doc. 38, at 43, PageID#725; Depo. Franke, Doc. 39, at 18-19, PageID#849-850). Also, the guidance suite contained individual offices and one of those was Ms. Lawson's, which had a separate door, that she could lock. (Depo. Lawson, Doc. 40 at 52, PageID#986; Depo Creely, Doc. 38, at 19-20, PageID#701-702; Depo Franke, Doc. 39, at 15-17, PageID#846-848).

Regarding the events of May 4, 2021: Ms. Lawson inadvertently left a firearm in her purse from the weekend before. The firearm was located at the bottom of her large purse, with a number of large items directly on top of the firearm. (Depo Lawson, Doc. 40, at 68-69, 171-172, PageID#1002-1003, 1105-1106). Her purse was latched and closed, and was located behind her desk inside of her locked office when she stepped out of her office around 1:30 p.m. that afternoon. (*Id.* at 160-161, 165, PageID#1099).[1]

Once Ms. Lawson left the guidance suite, Franke called the front office to have the secretary determine whether Ms. Lawson had exited the building. (Depo Creely, Doc. 38, at 70-71, PageID#752-753).[2] Franke then came to the door of Creely's office and, before carrying out their search of Ms. Lawson's purse, they both looked out the window to ascertain whether Ms. Lawson had actually left the building. (Depo. Creely, Doc. 38, at 43-44, PageID#725-726; Depo. Franke, Doc. 39, at 28-29, PageID#859-860).

---

[1] Although Creely and Franke both testified that Ms. Lawson's office door was open and unlocked when they entered to do their search of Ms. Lawson's purse (Depo. Creely, Doc. 38, PageID#727; Depo. Franke, Doc. 39, PageID#860-861), that testimony must be disregarded in favor of Ms. Lawson's testimony that her office door was closed and locked, for purposes of evaluating summary judgment in favor of Defendants. Creely and Franke also testified that Ms. Lawson's purse was open (though they admitted they could not see the contents). (Depo. Creely, Doc. 38, PageID#731-733; Depo. Franke, Doc. 39, PageID#863-864). Likewise, that testimony must be disregarded in favor of Ms. Lawson's testimony that her purse was closed for purposes of evaluating summary judgment in favor of Defendants. However, we do not believe that these facts are material or determinative for any legal issue.

[2] Franke gives conflicting testimony with Creely and states that the call to the office happened after she and Creely had already searched Ms. Lawson's purse. (Depo. Franke, Doc. 39, at 34-35, PageID#865-866).

Consequently, concerning review of Creely and Franke's summary judgment motion, and given their admissions of having accessed Ms. Lawson's office, and Ms. Lawson's testimony that her door was locked, the reasonable inference to draw is that Creely and Franke used their school issued keys to access Ms. Lawson's locked private office. And, Creely testified that Ms. Lawson occasionally made statements about owning a gun and carrying it with her, and that she, Creely, had an awareness of this prior to searching Ms. Lawson's purse, thus demonstrating foreseeability of the events that followed. (Depo. Creely, Doc. 38, at 73-74, PageID#755-756).

Creely, who led the effort to search Ms. Lawson's purse (Franke testified she just went along with Creely in conducting the search), purportedly wanted to determine what medication Ms. Lawson had taken earlier in the day, due to a "concern for the students that she was working with," and "as a coworker." (*Id.* at 46, PageID#728; Depo. Franke, Doc. 39, at 32-33, 36, PageID#863-864, 867). Regardless, Ms. Lawson's purse was under her desk, so it only could have been accessed by entering into the office and walking around Ms. Lawson's desk. (Depo. Franke, Doc. 39, at 31-32, PageID#862-863). And, Creely and Franke admitted they were not authorized by Ms. Lawson to search her purse, and they had no warrant to search Ms. Lawson's purse. (Depo. Creely, Doc. 38, at 83-84, PageID#765-766; Depo. Franke, Doc. 39, at 40-41, PageID#871-872).

8

In conducting the warrantless search, Creely bent down, looked into the purse and began to pick bottles of medication out from the purse. (Depo. Creely, Doc. 38, at 49-50, PageID#731-732; Depo. Franke, Doc. 39, at 53-54, 56, PageID#884-885, 887). And, it was only after returning these items to Ms. Lawson's purse that she was able to see what she believed to be the "handle" of a firearm. *Id.* After their warrantless search, Franke then used her work computer to look up the side effects of the prescription medications they found in Ms. Lawson's purse. (Depo. Franke, Doc. 39, at 54-55, PageID#885-886).

To assist the Court in assessing the layout of Ms. Lawson's office that day, photographs of the guidance suite and Ms. Lawson's former office are part of the record, as well as an Interrogatory Response by the Board that the guidance suite and office were in materially the same condition when photographed in 2023, as they were during the events in question. (Declaration Wiest, with photographs, Doc. 46-1, PageID#1441-1453; Interrogatory Responses by Board, Doc. 46-2, PageID#1454-1464).

As noted, Creely was in the guidance office suite that day solely because of her work for the school, and was on the clock for the school at the time she accessed and searched Ms. Lawson's purse. (Depo. Creely, Doc. 38, at 55-56, PageID#737-738). Similarly, Franke was on the clock and only was able to access Ms. Lawson's office solely by virtue of her employment with the school. (Depo. Franke, Doc. 39,

at 43-45, PageID#874-876).  School officials testified that the search occurred (i) on school property, (ii) during the school day and during the work hours of Creely and Franke, and (iii) that Creely and Franke were able to access Ms. Lawson's office solely as a consequence of their employment at the school.  (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 57-60, 63, 73, 153-154, PageID#406-409, 412, 422, 502-503).  And, Creely and Franke could not say whether or not school policies prohibited or permitted them to search Ms. Lawson's purse.  (Depo. Creely, Doc. 38, at 51, 97-98, PageID#733, 779-780; Depo. Franke, Doc. 39, at 60, PageID#891).

Ultimately, Ms. Lawson came back into the guidance suite.  (*Id.* at 53, PageID#884).  Ms. Ashley Reid, another district employee, then came to Creely's office and they discussed the discovery of the firearm.  (Depo. Creely, Doc. 38, at 54-55, PageID#736-737).  Ms. Reid told Creely that, pursuant to Board policy, the discovery of the firearm had to be reported and that Ms. Reid would report it to Sergeant Kelly, who was a sworn school resource officer.  (*Id.* at 56-57, PageID#738-739).  Accordingly, in the course and scope of their employment, both Creely and Franke were required to, and did, complete statements documenting their search of Ms. Lawson's purse.  (*Id.* at 60-63, Exhibits 28 and 30, Doc. 36-32, Doc. 36-34, PageID#603-604, 606).

As a consequence of their actions, Creely faced discipline from the school, although not for an unauthorized (illegal according to the District Court) search, but

10

instead for not more promptly reporting the discovery of the firearm. (*Id.* at 76-78, Exhibit 7, PageID#425-427.)  Likewise, Franke also only was disciplined for failing to more promptly report the discovery of the firearm. (Depo. Franke, Doc. 39, at 62-63, PageID#893-894).  And, school administrators testified that they would take disciplinary action with respect to any inappropriate staff behavior or policy violations, but they did not discipline Creely or Franke for their warrantless search of Ms. Lawson's purse. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 76-77, PageID#425-427).  In fact, Superintendent Kopp testified he was pleased with the discovery of the firearm and its removal from school property for the safety of students. (*Id.* at 148, PageID#497).  Once again, Creely and Franke were admonished only because they did not make a report of the firearm on school property immediately following their search of Ms. Lawson's purse. (*Id.* at 152-153, PageID#501-502).

**B. The events of May 5, 2021**

As a consequence of the report of the firearm, Kopp decided the evening of May 4, 2021, that Ms. Lawson would be suspended, and he came up with a plan where he would meet with Ms. Lawson at the High School the next morning, and then question her in a law enforcement officer's office and with law enforcement officers present. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 94, 105, PageID#443, 454).  The next morning, on May 5, 2021, Kopp, as planned, met

Ms. Lawson at the front door of the High School and ordered her to follow him to the School Resource Officer's office. (*Id.* at 109-110). Kopp had planned for the interrogation to occur in the SRO office so that there would be a strong law enforcement presence during his interrogation. (Depo. Marvin Kelly, Doc. 43, at 18-20, PageID#1239-1241).

Waiting in the SRO office was school resource officer Kelly and safety coordinator Abrams, both sworn officers with the Franklin County Sheriff's office, both of whom carried firearms, had law enforcement badges on their shirts, and had handcuffs displayed. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 110, 119-120, PageID#459, 468-469). The location, complete with law enforcement signage, was intended to ensure law enforcement presence and to "intimidate." (Depo. Marvin Kelly, Doc. 43, at 18-20, PageID#1239-1241; Declaration Wiest, with photographs, Doc. 46-1, PageID#1441-1453). In other words, the SRO office was chosen because Kopp wanted police presence and the show of force. (Depo. Kelly, Doc. 43, at 18-19, PageID#1239-1240).

Once Ms. Lawson was escorted into the SRO office, the door was closed behind her and Kopp then stood between Ms. Lawson and the door, thus blocking her ability to exit. (*Id.* at 111, 117-118, Exhibit 40, Doc. 37 (filed conventionally), PageID#681-682). Officer Abrams stood immediately beside Kopp, thus enabling him to intervene and stop Ms. Lawson from exiting. (*Id.*).

Kopp interrogated Ms. Lawson for a little less than four minutes, and it began with an accusation from Kopp about the firearm. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 110-112, 117-120, PageID#459-461, 466-469, Exhibit 40, Doc. 37 (filed conventionally), PageID#681-682). The interrogation was mostly recorded on Deputy Kelly's body worn camera. (*Id.*).

No one told Ms. Lawson she was free to leave, or that she could decline to answer questions, and no one read her rights to her under *Miranda* or *Garrity*. (*Id.* at 111-112, 118-119, Exhibit 40, PageID#1045-1046, 1052-1053). Unequivocally, Ms. Lawson testified she was not free to leave. (Depo. Lawson, Doc. 40, at 170, PageID#1104). And Kopp testified he had a right to pose questions to his employees. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 112, PageID#461). In fact, Kopp admitted: "I'm kind of a big fellow, and I was standing in front of the door…" *Id.* at 111, PageID#460.

Ms. Lawson responded to the interrogation by stating she was unaware that any firearm was in her purse, she then looked in her purse, discovered it was there, and she promptly was arrested. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 110-112, 117-120, PageID#459-461, 466-469, Exhibit 40, Doc. 37 (filed conventionally), PageID#681-682).

**C. Procedural History and District Court Opinion**

13

Ms. Lawson filed suit against Defendants on May 1, 2022. (Compl., Doc. 1, PageID#1-11)  The parties conducted discovery, and cross motions for summary judgment were filed.  The District Court denied Ms. Lawson's motion for summary judgment, determined that Defendants were entitled to summary judgment, and entered judgment accordingly.  Specifically, the District Court held that Creely and Franke were entitled to summary judgment on qualified immunity (even though cases decided prior to their illegal search would have put a reasonable government worker on notice that such action was not permissible), and that Kopp's detainment and questioning was merely a *Terry* stop.  That analysis was improper.

## SUMMARY OF THE ARGUMENT

Although the material facts were not in dispute, the District Court improperly granted summary judgment to Creely and Franke on the basis of qualified immunity, and improperly granted summary judgment to the other Defendants, including on the basis of applying a *Terry* stop framework to a custodial detention.  Consequently, the District Court should have granted summary judgment to Plaintiff.

## STANDARD OF REVIEW

In considering a motion for summary judgment, the court must view the factual evidence in favor of the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).

When qualified immunity is at issue, there is a two-step sequence for resolving a government official's claim to qualified immunity.  First, the court must analyze whether the facts a plaintiff has alleged in his/her complaint make out a violation of a constitutional right, and second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's misconduct.  *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Plaintiffs overcome qualified immunity by citing to "cases of controlling authority in their jurisdiction at the time of the incident" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."  *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Kent v. Oakland County*, 810 F.3d 384, 395 (6th Cir. 2016).  That said, "officials can still be on notice that their conduct violates established law even in novel factual circumstances" if "the state of the law . . . gave [the government officials] fair warning that their alleged [conduct] . . . was unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Moreover, even without citation to a particular case, Plaintiffs can overcome qualified immunity if the facts are "particularly egregious."  *Taylor v. Riojas,* 141 S. Ct. 52, 54 (2020).

**ARGUMENT**

**I.  The District Court improperly granted summary judgment to Creely and Franke on the basis of qualified immunity, and improperly denied it to Ms. Lawson**

## A. The District Court correctly determined Creely and Franke were acting under color of law

The District Court correctly held that Creely and Franke were acting under color of law when they conducted the warrantless search of Ms. Lawson's purse. To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a person, (2) acting under color of state law, (3) deprived him or her of a constitutional right. *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). To determine whether a public official was acting in his state capacity, courts apply the "state-official test," which is "simply a version of the Supreme Court's nexus test."[3] *Dean v. Byerley,* 354 F.3d 540, 552-53 (6th Cir. 2004); *Waters v. City of Morristown*, 242 F.3d 353, 359-60 (6th Cir. 2001). To answer that question, courts analyze whether the action is "entwined with governmental policies" or subject to the government's "management or control." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).

Generally, this test is satisfied when a state actor's conduct (1) occurs "in the course of performing an actual or apparent duty of his office," or (2) when "the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359 (*citing West v. Atkins*, 487 U.S. 42, 49-50

---

[3] The "nexus" test asks the question of whether, or specifically when, a private actor becomes a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

(1988)).  "[S]tate employment is generally sufficient to render the defendant a state actor."  *West*, 487 U.S. 42 at 49.

In *United States v. Lanier*, 73 F.3d 1380 (6th Cir. 1996) (en banc), vacated on other grounds by 520 U.S. 259 (1997), this Court found state action.  There, Lanier, the only chancellor and juvenile court judge in two Tennessee counties, was found guilty under 18 U.S.C. § 242 of using his official position to coerce sexual favors from various women who appeared before him.  *Id.*  All of Lanier's victims had business with the court, either as litigants, court personnel, or participants in court-related programs.  *Id.*  Furthermore, all of the attacks took place in Lanier's chambers during working hours.  *Id.* at 1397.  Lanier even fondled one of the women while wearing his judicial robes.  *Id.* at 1400.  Consequently, Lanier would not have been in the same position to abuse his victims except for his official status as a state-court judge.  *Id.*

In *Wilson v. Webb*, 2000 U.S. App. LEXIS 23585 (6th Cir. 2000), this Court again found state action regarding school employee conduct, even against similar arguments to those made by Defendants here that the actions were not specifically authorized, because the employee's conduct occurred on school grounds during school hours.  And the same was true in *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996).  Moreover, for decades federal courts have held that state employees act under color of law even when their official actions are done in violation of state law.

17

*See generally, Monroe v. Pape*, 365 U.S. 167, 184 (1961) (overruled on unrelated grounds).

Here, Board policies and handbooks gave Defendants wide authority and discretion. Indeed, those policies required "all employees to use sound judgment in the performance of their duties and take reasonable measures to protect the health, safety, and well-being of others as well as district property." (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 24-27, 86-89, 166-169, Exhibit 11, Doc. 36-14, Exhibit 12, Doc. 36-15, Exhibit 14, Doc. 36-17, PageID#373-376, 435-438, 515-518, 576, 577, 579-586). This is consistent with Creely's testimony that her purpose in entering Ms. Lawson's office was out of "concern for the students that she was working with," and "as a coworker," as her justification plainly tracks the language of that policy. (Depo. Creely, Doc. 38, at 46, PageID#728). Thus, the first state action/actor test was met: the action here occurred "in the course of performing an actual or apparent duty of [her] office." *Waters*, 242 F.3d at 359.

In fact, both Creely and Franke were required to, in the course and scope of their employment, and did, complete statements documenting their search of Ms. Lawson's purse. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 60-63, Exhibits 28, Doc. 36-32, and 30, Doc. 36-34, PageID#409-412, 603-604, 606). Consequently, state action here is all the more demonstrated because the search occurred on school property, during school duty hours, Defendants were on the clock

18

being paid at the time, and they were required to report their conduct to their superiors. (Depo. Creely, Doc. 38, at 55-56, PageID#717-718; Depo. Franke, Doc. 39, at 43-45, PageID#874-876; Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 57-60, 63, 73, 153-154, PageID#406-409, 412, 422, 502-503).

Likewise, the second state action prong equally is met: "the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359; *See also, United States v. Classic*, 313 U.S. 325, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law"). All Defendants admit that Creely and Franke could only access Ms. Lawson's office by virtue of their positions and employment at the school. (Depo. Creely, Doc. 38, at 55-56, PageID#717-718; Depo. Franke, Doc. 39, at 43-45, PageID#874-876; Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 57-60, 63, 73, 153-154, PageID#406-409, 412, 422, 502-503). Per the testimony of Ms. Lawson, the door was locked and Creely and Franke had to use their school-issued keys to access Ms. Lawson's office and her purse. (Depo Lawson, Doc. 40, at 160-161, PageID#1094-1095). Therefore, the but-for state action test is met. *Lanier*, 73 F.3d 1380 (6th Cir. 1996); *Wilson*, 2000 U.S. App. LEXIS 23585; *Doe*, 103 F.3d 495.

Defendants argued below that because the lawsuits against them are not in their official capacities, this somehow renders them not state actors.  That contention is contrary to law.  *Waters*, 242 F.3d at 359.  Nor is it of any relevance that Creely and Franke were not agents of law enforcement (though board policy required immediate reporting to law enforcement of any discovery of firearms, negating that argument), or that they were not Ms. Lawson's supervisor.  And, contrary to Defendants' argument that their discipline for not immediately reporting the firearm rendered them not state actors, the fact that they failed to adhere to the expectation that they would do so demonstrates governmental policy regarding their job duty to do so.

Defendants were state actors when they undertook the warrantless search of the Ms. Lawson's purse.  But even if they weren't, their actions here were sufficiently intertwined with governmental action to make them state actors under the "nexus test."  *Lugar*, 457 U.S. 922, 937; *see, also, United States v. Fortney*, 772 Fed. Appx. 269 (6th Cir. 2019) (bag search by employer, which was enabled by government officials satisfies the test).  Under that test, courts analyze whether the action is "entwined with governmental policies" or subject to the government's "management or control." *Brentwood Acad.*, 531 U.S. 288, 296.  Both are true here. There is no question but that the Board had the ability to control Creely and Franke's access to, and search of, Ms. Lawson's purse.

20

## B. The District Court correctly determined Creely and Franke violated Ms. Lawson's Fourth Amendment rights

The Court below also correctly held that Creely and Franke's warrantless, unconsented-to search of Ms. Lawon's purse violated Ms. Lawson's federally protected rights.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be  violated[.]"  U.S. Const. amend. IV.  "The basic purpose of this Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 528 (1967).  "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (internal citations omitted).  Governmental actors bear the burden of demonstrating that an exception to the warrant requirement applies.  *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

Those exceptions include (1) consent, (2) hot pursuit of a fleeing felon, (3) imminent destruction of evidence, (4) the need to prevent a suspect's escape, and (5) a risk of danger to the police or others.  *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996); *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996).  Here,

21

Creely and Franke never argued that any of these exceptions applied, and Creely's testimony about her motivation for the search being her concern for Ms. Lawson, or her concern about the safety of students interacting with Ms. Lawson, does not establish any of these exceptions. Thus, the search was unlawful. *Katz*, 389 U.S. 347, 357; *Jeffers*, 342 U.S. 48, 51. *See, also*, *Shealy v. Caldwell*, 16 Fed. Appx. 388 (6th Cir. 2001) (warrantless search of an employee purse violated the Fourth Amendment); *United States v. McClendon*, 86 Fed. Appx. 92 (6th Cir. 2004) (search of satchel required a warrant, even where it was left in a public place); *United States v. Waller*, 426 F.3d 838 (6th Cir. 2005) (search of bag required warrant).

Even applying the workplace search doctrine (which does not apply because we deal here with a purse within the workplace and not the workplace itself), the Supreme Court in *O'Connor v. Ortega*, 480 U.S. 709, 716 (1987) explained that personal property, such as a purse or bag, brought into the workplace is subject to full warrant requirements:

> Not everything that passes through the confines of the business address can be considered part of the workplace context, however. An employee may bring closed luggage to the office prior to leaving on a trip, or a handbag or briefcase each workday. While whatever expectation of privacy the employee has in the existence and the outward appearance of the luggage is affected by its presence in the workplace, the employee's expectation of privacy in the contents of the luggage is not affected in the same way. **The appropriate standard for a workplace search does not necessarily apply to a piece of closed personal luggage, <u>a handbag</u>, or a briefcase that happens to be within the employer's business address**.

22

As in *O'Connor*, the plaintiff here, at the very least, had an expectation of privacy in her desk and office because she did not share them with other employees and the employer had no policy against storing personal items in them. *Id.* at 718-19. Regardless, Ms. Lawson's purse has full protection under *O'Connor* from warrantless searches. *See, also*, *United States v. Taketa*, 923 F.2d 665, 673 (9th Cir. 1991); *United States v. Slanina*, 283 F.3d 670, 677 (5th Cir. 2002); *Leventhal v. Knapek*, 266 F.3d 64, 73-74 (2d Cir. 2001); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328 (9th Cir. 1987).

This Court, in *James v. Hampton*, 592 Fed. Appx. 449 (6th Cir. 2015), made clear that a warrant must be obtained, or warrant exception must apply, for a search of personal luggage or a briefcase in a workplace. Similarly, in *American Postal Workers Union, etc. v. United States Postal Service*, 871 F.2d 556, 559 (6th Cir. 1989), this Court held that "[g]enerally, employees, including those who worked in the public sector, have been considered to possess a reasonable expectation of privacy in their possessions and work stations." And in *American Postal Workers Union*, this Court observed that there was no search of any "closed containers, purses or pockets of apparel," which would have been a violation of the Fourth Amendment had it occurred. *Id.* at 561. Well, here there was such a search. And, as a consequence a violation of the Fourth Amendment occurred. *See, also, Shealy*, 16 Fed. Appx. 388 (purse search at work unconstitutional).

23

Defendants violated Ms. Lawson's Fourth Amendment rights through their warrantless search of her purse.

### C. The District Court erred in finding Creely and Franke were entitled to summary judgment on the basis of qualified immunity

The District Court erroneously held that Creely and Franke are entitled to qualified immunity. To begin with, if Creely and Franke were private actors (as they repeatedly argued), who were acting in concert with governmental actors, qualified immunity does not apply (which is equally true if the Court had found a genuine issue of material fact on that score). *McKnight v. Rees*, 88 F.3d 417 (6th Cir. 1996); *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464 (6th Cir. 2014).

But assuming Defendants were governmental actors, there is a two-part test to determine qualified immunity. The two-step sequence for resolving a government official's claim to qualified immunity analyzes, first, whether the facts a plaintiff has alleged in his/her complaint make out a violation of a constitutional right, and second, the court must decide whether the right at issue was "clearly established" at the time of defendant's misconduct. *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). As demonstrated above, there was a violation of the Fourth Amendment, and thus we now turn to whether the right was clearly established.

Plaintiffs overcome qualified immunity by citing to "cases of controlling authority in their jurisdiction at the time of the incident" or "a consensus of cases of

24

persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Kent v. Oakland County*, 810 F.3d 384, 395 (6th Cir. 2016). That said, "officials can still be on notice that their conduct violates established law even in novel factual circumstances" if "the state of the law . . . gave [the government officials] fair warning that their alleged [conduct] . . . was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). And, even without citation to a particular case, a Plaintiff can overcome qualified immunity if the facts are "particularly egregious." *Taylor v. Riojas,* 141 S. Ct. 52, 54 (2020).

Preliminarily, at the time of Defendants' actions, a search subject to Fourth Amendment scrutiny was clearly defined as "the government[al] violat[ion of] a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). The reasonableness of an individual's expectation of privacy in a closed purse in a locked office is not the type of close question that might yield itself to a reasonable misapprehension of clearly established law. *See United States v. Bailey*, 628 F.2d 938, 943-44 (6th Cir. 1980) (concluding that illegal search occurred when government placed beeper inside drum of chemicals that had been placed in a "locked storage compartment"); *cf. United States v. Jacobsen*, 466 U.S. 109, 129 (1984) (White, J., concurring) ("The Court . . .has made clear that the Fourth Amendment provides protection to the owner of

25

every container that conceals its contents from plain view and does not otherwise unmistakably reveal its contents.") (internal quotation marks omitted); *Garcia v. Dykstra*, 260 Fed. Appx. 887 (6th Cir. 2008).

Here, several cases, both above and below, and all decided before Creely and Franke's warrantless search of Ms. Lawson's purse, clearly put them on notice that, with no exception being applicable, their conduct was unlawful. *Katz*, 389 U.S. 347, 357; *Jeffers*, 342 U.S. 48, 51; *Shealy*, 16 Fed. Appx. 388; *McClendon*, 86 Fed. Appx. 92; *Waller*, 426 F.3d 838.

Equally, the warrantless search of Ms. Lawson's purse was unlawful under clearly established law regarding improper workplace searches, as set forth in cases that also had been decided by the time of Creely and Franke's conduct. *Ortega*, 480 U.S. 709, 716; *Taketa*, 923 F.2d 665, 673; *Slanina*, 283 F.3d 670, 677; *Knapek*, 266 F.3d 64, 73-74; *Schowengerdt*, 823 F.2d 1328; *James*, 592 Fed. Appx. 449; *American Postal Workers Union, etc.*, 871 F.2d 556, 559, 561.

Creely and Franke violated clearly established law – when, without probable cause or reasonable suspicion, or consent, they entered Ms. Lawson's locked office, opened her closed purse, rummaged through it, removed contents from the purse, and then, pursuant to Board policy, reported to law enforcement what they found, thus setting off an inevitable chain of events that led to Ms. Lawson losing her job and being criminally charged.

The District Court thus erred in granting Creely and Franke summary judgment, and in denying summary judgment to Ms. Lawson.

## II. The District Court improperly granted summary judgment to the Board and Kopp and denying summary judgment to Ms. Lawson on her claims against the Board and Kopp

### A. The District Court erred in analyzing the seizure, detention, and questioning of Ms. Lawson on May 5, 2021, by Kopp and law enforcement, under the framework of a *Terry* stop, versus a custodial interview

The District Court misapplied *Terry* in analyzing the custodial detention of Ms. Lawson. Because she was in custody during her interrogation, *Terry* simply does not apply. Further, the Court found the applicability of *Terry's* reasonable suspicion standard without either party briefing such applicability. *See*, Fed. R. Civ. P. 52; *United States v. Forness*, 125 F.3d 928 (2d Cir. 1942) (cert denied) (District Courts should only make brief definite, pertinent findings and conclusions upon the *contested matters*).

To determine whether there is a violation of *Miranda* (and relatedly for public employment questioning, *Garrity*), courts look at whether the requirements of both "in custody" and interrogation occurs. *United States v. Salvo*, 133 F.3d 943, 949 (6th Cir. 1998). Of course, a formal arrest need not occur for a person to be "in custody" for purposes of *Miranda* (or *Garrity*). *Dunaway v. New York*, 442 U.S. 200 (1979) (a de facto arrest is both "custody" under *Miranda* and a "seizure"

27

requiring probable cause under the Fourth Amendment.); *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) ("Custody" occurs where police formally arrest the suspect **or** curtail his "freedom of movement" to a "degree associated with formal arrest.")

Here, the District Court held that the custodial encounter in question was a mere *Terry* stop, *citing United States v. Smith*, 594 F.3d 530 (6th Cir. 2010). But Smith was a two-minute interaction with police at an apartment complex where the person being searched resided. Here, and unlike in *Smith*, Ms. Lawson was met at the door to the High School, escorted into and detained in a law enforcement officer's office, rather than an administrator's office or even Ms. Lawson's own office; an office with the law enforcement shield on the door, where two uniformed armed law enforcement officers were strategically stationed inside, all of which was designed to be a show of force and intimidate Ms. Lawson. Then Kopp closed the door, blocked Ms. Lawson's exit, and began an interrogation. These facts are far from being a brief, one-on-one encounter on a street, in a vehicle, or outside someone's own residence that possibly would trigger the application of *Terry*.

In fact, *Terry* doesn't apply unless the "investigative means used" are "the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time." *United States v. Perez*, 440 F.3d 363, 372 (6th Cir. 2006). Consequently, *Terry* wouldn't apply unless Kopp met Ms. Lawson at the front door

and merely asked whether she had a gun in her purse and could he look inside.  That would be the "least intrusive means reasonably available" to dispel any suspicions about a gun.  Plainly, that is not what occurred here.

Although no bright line distinguishes an investigative detention from an arrest, *Florida v. Royer*, 460 U.S. 491, 506 (1983), officers may not "seek to verify their suspicions by means that approach the conditions of arrest." *Id.* at 499.  The factors this Court has considered in deciding whether that line has been crossed include transportation to another location, significant restraints on freedom of movement involving physical confinement or other coercion, and the use of weapons or bodily force. *United States v. Lopez-Arias*, 344 F.3d 623, 627 (6th Cir. 2003). Here, of course, Ms. Lawson was escorted into a law enforcement officer's office for questioning, was not free to leave with the door strategically being blocked, and with two armed law enforcement officers present, along with a large school administrator, all for the purpose of a show of force and intimidating her while undergoing questioning.  Those undisputed facts negate *Terry*.

And, to determine whether a custodial interview occurred, "[t]he ultimate inquiry is whether, under the totality of the circumstances, the interviewee's freedom of movement was restrained to a degree associated with formal arrest." *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017) (*citing United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009)).  This Court has identified four, non-exhaustive

29

factors to help guide this inquiry: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010). Perplexingly, the District Court evaluated none of these factors in this matter, despite it being fully briefed below.

Location of the interview: Here, the location was not an administrator's office but, by design, was the SRO office complete with the Sheriff's office crest on the door and two uniformed and visibly armed law enforcement officers, all of which was intended to intimidate and be a maximum show of force. (Depo. Marvin Kelly, Doc. 43, at 18-20, PageID#1239-1241; Declaration Wiest, with photographs, attached at Doc. 46-1, PageID#1441-1453). Consequently, the first factor weighs in favor of custodial detention. *United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998).

Length and manor of questioning: As to the second factor, although the interview time was less than four minutes, the accusatory nature of the interview in the presence of armed law enforcement officers, and beginning with an allegation about the firearm, weighs in favor of custody (or at least renders this factor neutral). (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 110-112, 117-120,

PageID#459-461, 466-469; Exhibit 40, Doc. 37 (filed conventionally), PageID#681-682); *United States v. Martinez*, 795 F. App'x 367, 374 (6th Cir. 2019).

Restraint of movement: Without question, the presence of two uniformed officers, who were armed, wore uniforms, and displayed handcuffs, in a law enforcement office, along with Mr. Kopp who was large and intimidating, and who was purposely standing between Plaintiff and the closed door, satisfies the third factor.  (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 111-112, 118-119, PageID#460-461, 467-468; Exhibit 40, Doc. 37 (filed conventionally), PageID#681-682).  *United States v. Zabel*, 35 F.4th 493, 503 (6th Cir. 2022); *United States v. Panak*, 552 F.3d 462, 467 (6th Cir. 2009).

Whether subject told they need not answer questions: Most importantly, Ms. Lawson was not told she could leave, or that she was free to decline to answer questions.  (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 111-112, 118-119, PageID#460-461, 467-468; Exhibit 40, Doc. 37 (filed conventionally), PageID#681-682; Depo. Lawson, Doc. 40, at 170, PageID#1104).    Indeed, "[w]hether investigators inform a suspect that he is free to leave or to refuse to answer questions *is the most important consideration* in the *Miranda* custody analysis." *United States v. Martinez*, 795 F. App'x 367, 371 (6th Cir. 2019) (*citing Howes v. Fields*, 565 U.S. 499, 515 (2012)). (emphasis added).  And this interaction was not consensual. *Tarter v. Raybuck*, 742 F.2d 977 (6th Cir. 1984) (the Supreme

31

Court and this Court have held that public employees cannot be given a stark choice between asserting a constitutional right and losing their jobs); *Gardner v. Broderick*, 392 U.S. 273, 279 (1968) ("the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment"). *See, also, United States v. Fortney*, 772 Fed. Appx. 269 (6th Cir. 2019) (similar bag search and alleged "consent" that this Court indicated was not consent in similar factual situation).

Thus, on this record, there was an illegal detention under the Fourth Amendment, and illegal questioning that followed under the Fifth Amendment. *Panak*, 552 F.3d 462, 465; *Shealy*, 16 Fed. Appx. 388 (finding similar circumstances to the present case a seizure). The District Court erred in granting summary judgment to Kopp and the Board. Summary judgment should have been entered in Ms. Lawson's favor as to liability on these claims.

### B. The District Court erred in finding the Board not liable under *Monell* for the actions of Creely and Franke

While the District Court held that Creely and Franke's search of Appellant's purse was unlawful, the District Court plainly erred in finding that Creely and Franke's actions did not lead to *Monell* liability for the Board.

1. <u>The purse search was conducted, in the alternative, as a result of the Board's failure to train Defendants Creely and Franke.</u>

The Supreme Court has outlined the type of conduct resulting in *Monell* liability from a failure to train theory. "One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). "To succeed on an inadequate training claim, a plaintiff must prove: '(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury.'" *Berry v. Delaware County Sheriff's Office*, 796 Fed.Appx. 857, 861 (6th Cir. 2019) (*citing Roell v. Hamilton County Ohio/Hamilton County Board of County Commissioners*, 870 F.3d 471, 487 (quoting *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016)).

Here, Board policies and handbooks gave employees such as Creely and Franke nearly unfettered authority and discretion to take steps concerning, among other things, the "safety" of students, but without any training on what actions were appropriate to carry out that policy. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 166-169, Exhibits 11, Doc. 36-14, and 12, Doc. 36-15, PageID#515-518, 576, 577). For example, under such a broad policy as to preserve "the health, safety, and wellbeing of others," unauthorized and unlawful searches are an entirely predictable outcome, because the policy ostensibly gives total discretion without any training on what constitutes "reasonable measures". *Id.* at 73. In

33

deposition, the 30(b)(6) deponent for the Board made it abundantly clear that the Board offers no "specific training that addresses reasonable measures. *Id*. Doc. 36, at 168-169, PageID#517-518. The Board also provides no educational material on what constitutes "a reasonable measure to protect health, safety, and well-being of others" as part of the training process. *Id.* Accordingly, to put such broad policies in place, but with zero guidance to staff, including no training on what limits exist under the Constitution, is the exact policy to create an atmosphere where staff will engage in the Constitutional violation that occurred in this instance. But for the Board's wholesale failure to train staff on what constitutes a reasonable measure to protect the health, safety, and wellbeing of others, the search of Ms. Lawson's purse never would have occurred.

In light of Constitutional demands, the Board's complete lack of training, and the Board's inability to even answer the question as to whether its policy authorized the illegal search by Creely and Franke, deliberate indifference by the Board is confirmed, particularly in light of the unfettered discretion that is facially granted to employees. This deliberate indifference by the Board inherently makes searches like the one in this case an inevitability. And this inadequacy was fundamental in causing the unlawful search of Ms. Lawson's purse. *Monell* liability attaches due to the Board's wholesale failure to train.

2. The purse search was conducted pursuant to Board policy, and/or was authorized by Board policy, thus the Board is liable under *Monell*

34

Creely, and all employees, had the duty to take reasonable measures to protect the health, safety, and well-being of others within the school. (*Id.* at 91-92, PageID#773-774; Depo. Franke, Doc. 39, at 73, PageID#904). All employees were required to report drug or alcohol issues to law enforcement on school grounds. (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 12-13, 86-87, Exhibits 6-7, Doc. 36-7, Doc. 36-8, PageID#361-362, 559-561, 562-563). All employees were required to report any unsafe working conditions to the Superintendent. (*Id.* at 15-16, 86-87, Exhibit 9, Doc. 36-10, PageID#364-365, 435-436, 566-568). There was a no tolerance weapons policy that included the authority to search belongings. (*Id.* at 17-18, 86-87, Exhibit 10B, Doc. 36-12, PageID#366-367, 436-437, 571-573). And there was an open-ended policy that authorized "all employees to use sound judgment in the performance of their duties and take reasonable measures to protect the health, safety, and wellbeing of others as well as district property." (*Id.* at 24-25, 86-87, Exhibit 11, Doc. 36-14, Exhibit 12, Doc. 36-15, PageID#373-374, 435-436, 576, 577).

As noted, what constituted an appropriate measure under this broad "safety" policy was largely left to the unfettered discretion of the employee, and the Board offered no training on it. (*Id.* at 166-169, PageID#515-518, Exhibits 11, Doc. 36-14, and 12, Doc. 36-15, PageID#576, 577). Board representatives were unable to answer whether this policy authorized the search of an employee's purse if drug

usage concerns arose.  (*Id.* at 25, 86-87, PageID#384, 435-436).  Likewise, the Board issued employee handbook gave to staff the same general, broad authority to take broad measures regarding weapons, and to take broad measures to "protect the health, safety, and wellbeing of others as well as district property."  (*Id.* at 26-27, 29, 88-89, Exhibit 14, Doc. 36-17, PageID#375-376, 378, 437-438, 579-586).  And Creely's testimony that her purpose in entering Ms. Lawson's office out of "concern for the students that she was working with," and "as a coworker," plainly tracks the language of that policy.  (Depo. Creely, Doc. 38, at 46, PageID#728).

   In fact, both Creely and Franke, in the course and scope of their employment, were required to, and did, complete statements documenting the circumstances of their illegal search, a search that had been carried out by them while on the clock and on school grounds.  (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 60-63, Exhibits 28, Doc. 36-32, and 30, Doc. 36-34, PageID#603-604, 606; Depo. Creely, Doc. 38, at 55-56, PageID#717-718; Depo. Franke, Doc. 39, at 43-45, PageID#874-876)).  And, once again, as a consequence of their actions, Creely and Franke faced discipline from the school not for their unauthorized (illegal) search, but instead for not more promptly reporting the discovery of the firearm.  (Depo. Creely, Doc. 38 at 76-78, Exhibit 7, Doc. 38-10, PageID#758-760, 802-803; Depo. Franke, Doc. 39, at 62-63, PageID#893-894)).

Although the Board representative testified that disciplinary action would be taken with respect to any inappropriate staff behavior or policy violations, no such disciplinary action was taken against Creely or Franke as a result of their warrantless (illegal) search of the purse.  (Depo. Lewis/Kopp as FRCP 30(b)(6), Doc. 36 witnesses, at 76-77, PageID#425-426).  In fact, Superintendent Kopp admitted he was pleased with the discovery of the firearm and its removal from school property for the "safety" of students.  (*Id.* at 148, PageID#497).  And, he admitted Creely and Franke were admonished only because they did not immediately make a report of the firearm on school property once they discovered it.  (*Id.* at 152-153, PageID#501-502).

Consequently, these undisputed facts confirm that Creely and Franke acted pursuant to Board policy and/or procedure, as otherwise Kopp would have had to discipline them, rather than be pleased that they took the steps they did in order to discover the gun in Ms. Lawson's purse.  Simply put, the Board has *Monell* liability for the illegal purse search carried out by Creely and Franke, as it arose from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Adkins v. Board of Educ.*, 982 F.2d 952, 957 (6th Cir. 1993).

Furthermore, "a municipality may be liable if an employee's application of an otherwise constitutional policy leads to an unconstitutional result." *Monistere v.*

*City of Memphis*, 115 Fed. Appx. 845, 850 (6th Cir. 2004) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 278, 388 (1989) and *Brown v. Shaner*, 172 F.3d 927, 930 (6th Cir. 1999) ("A municipal policy that causes constitutional violations can be the basis for section 1983 liability.").  Unfettered discretion granted to employees regarding a policy that ostensibly permits conduct that is a constitutional violation gives rise to Monell liability.  *Monistere*, 115 Fed. Appx. 845, 850.  Here, but for the extreme discretion given to school employees, coupled with the failure to provide any training to limit that discretion, even as to Constitutional limits, Creely and Franke would not have had the authority to search Ms. Lawson's purse.

### C. The Board is liable for the actions and custodial detention of May 5, 2021 under *Monell*

That leaves the events of May 5, 2021.  As demonstrated above, see Section II A, this was a custodial detention requiring *Miranda* (or *Garrity*).

The decision-maker for the interaction here was Superintendent Kopp.  (Depo. Lewis/Kopp as FRCP 30(b)(6) witnesses, Doc. 36, at 23, 28-29, 68, 112, 148, 155, PageID#372, 377-378, 417, 461, 497, 504).  And Kopp testified that he had the ability and right under board policy to do what he did.  (*Id.*).

A school board, such as the Board here, can be liable under *Monell* through the actions of a single official where that official has "final policymaking authority." *Adkins*, 982 F.2d 952, 957.  Here, the interactions with Ms. Lawson on May 5, 2021, were done with the planning and execution by Superintendent Kopp, who did so

pursuant to authority conveyed upon him by both state law, and by Board policy. The District Court improperly granted summary judgment to the Board on this claim, and summary judgment should have instead been granted to Ms. Lawson on this claim.

### D. Kopp is not entitled to qualified immunity, qualified immunity does not apply to injunctive relief claims, and Ms. Lawson established as a matter of law that she was entitled to reinstatement

Here, Sixth Circuit law, decided prior to the date of these events, compelled the conclusion that, on these facts, Ms. Lawson was in custody. *Panak*, 552 F.3d 462, 465, 467; *Luck*, 852 F.3d 615, 621; *Hinojosa*, 606 F.3d 875, 883; *Salvo*, 133 F.3d 943, 951; *Martinez*, 795 F. App'x 367, 374; *Zabel*, 35 F.4th 493, 503; *Fields*, 565 U.S. 499, 515. Consequently, established Sixth Circuit case law also required the administration of either a *Miranda* or *Garrity* warning. *Panak*, 552 F.3d 462, 465; *Raybuck*, 742 F.2d 977; *Gardner*, 392 U.S. 273, 279. As demonstrated, Kopp violated these clearly established rights.

Further, qualified immunity does not shield Kopp from prospective equitable relief against him in his official capacity under *Ex parte Young*, 209 U.S. 123 (1908). That includes the remedy of reinstatement, which is equitable in nature, and runs to the official who constructively discharged Mrs. Lawson, here Superintendent Kopp. *Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014); *Cimerman v. Cook*, 561 Fed. Appx. 447 (6th Cir. 2014); *Turker v. Ohio Dep't of Rehabilitation & Corrections*,

157 F.3d 453, 459 (6th Cir. 1998) ("reinstatement to a job position clearly falls within the purview of prospective equitable relief"). Here, Mrs. Lawson seeks that relief. Further, she seeks relief in the form of an order directing the expungement of any adverse actions taken against her, to include the suspensions imposed prior to her constructive discharge. *Li v. Revere Loc. Sch. Dist.*, 2023 U.S. App. LEXIS 11284 at *34 (6th Cir. 2023) (explaining expungement of adverse records is equitable relief).

Summary judgment in favor of Kopp should be reversed, with instructions to enter summary judgment in favor of Ms. Lawson as to liability, and directing the District Court to order Ms. Lawson be reinstated.

### E. The Board is not immune under the Eleventh Amendment

The Board argued below that it had immunity under the Eleventh Amendment. The issue was largely addressed in *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977). There, the fact that in Ohio (as in Kentucky) the school board was one of many boards around the state, that the board received money from the state, or had policies set by the state board of education was of little moment because the board more closely resembled a subdivision in that it had local taxing powers, the power to issue bonds, and this meant it more closely resembled a subdivision than an arm of the state. *Id.*

Under *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 44-51 (1994), a multi-factor test is employed to decide whether an entity is an "arm of the state." These factors include: (1) the State's potential liability for a judgment against the entity, (2) the language by which the state statutes and state courts refer to the entity, the degree of state control and its veto power over the entity's actions; (3) whether the state or local official appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government. *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005). The first factor is the foremost factor in the analysis. *Id.* (*citing Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)).

Every single court that has addressed this question for Kentucky schools has universally held that Eleventh Amendment immunity does not apply. *Green v. Nicholas Cnty. Sch. Dist.*, 756 F. Supp. 2d 828, 831 (E.D. Ky. 2010) (holding "that local school districts are political subdivisions that may not assert Eleventh Amendment immunity" in a 1983 claim); *Doe v. Knox County Bd. of Educ.*, 918 F. Supp. 181 (E.D. Ky. 1996) (same); *Tolliver v. Harlan County Bd. of Educ.*, 887 F. Supp. 144 (E.D. Ky. 1995) (same); *Blackburn v. Floyd County Bd. of Educ.*, 749 F. Supp. 159 (E.D. Ky. 1990) (same); *A.M. v. Jefferson Cnty. Bd. of Educ.*, 2022 U.S. Dist. LEXIS 14034 at *8, fn. 1 (WDKY 2022) (same); *Cunningham v. Grayson*, 541 F.2d 538, 543 (6th Cir. 1976); *Meredith v. Jefferson County Bd. of Educ.*, 2007 U.S.

Dist. LEXIS 83461 (WDKY 2007) (the language of KRS 160.160 leads the Court to conclude that any monetary damages against JCBE would not cause a depletion on the state treasury thus no Eleventh Amendment immunity); *Florence v. Harrison Cty. Bd. of Educ.*, 2005 U.S. Dist. LEXIS 54391 (KYED 2005); *Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 836 (Ky. 2004) (immunity under Kentucky law does not apply to federal claims brought under 42 U.S.C. § 1983); *Fayette County Bd. of Educ. v. Maner*, 2009 Ky. App. Unpub. LEXIS 234, *64 (Ct. App. May 22, 2009) (same). The Board has insurance, rather than the state treasury, that will satisfy any judgment here.[4]

The Board is not entitled to Eleventh Amendment Immunity.

## CONCLUSION

The District Court erred in granting summary judgment to Creely and Franky; it also erred in granting summary judgment to Kopp and the Board; and it erred in denying Ms. Lawson's motions for partial summary judgement in her favor and against Defendants on liability and in denying her the equitable remedy of reinstatement. The judgment and orders should be reversed with instructions to enter judgment in favor of Ms. Lawson on liability, to order her reinstated, and to hold a

---

[4] The school Defendant also had insurance, negating any claim here that the state treasury could potentially be liable. https://education.ky.gov/districts/FinRept/Documents/FY2020-2021%20FA%20Franklin%20Co%20Rev.pdf at pages 43-44 (last accessed 11/9/2023). Judicial notice can be taken of this public government website.

trial on the amount of damages, including the propriety and amount of punitive damages against Appellees Kopp, Creely and Franke.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Theodore Roberts (KBA 100610)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
513/257-1895 (c)
chris@cwiestlaw.com

 /s/Thomas Bruns_____
Thomas B. Bruns (KBA 84985)
Bruns Connell Vollmar & Armstrong
4555 Lake Forest Drive, STE 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513/312-9890
*Attorneys for Plaintiff/Appellant*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for the Defendants, this 3 day of September, 2024, by filing same with the Court via its CM/ECF system, and by electronic mail upon Counsel for the Defendants, which will provide notice to all parties Counsel.

/s/ Christopher Wiest_____

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32(a), I certify that this Appellant's Brief contains 10,261 words. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

/s/ Christopher Wiest_____

# APPENDIX -- DESIGNATION OF THE DISTRICT COURT RECORD

Plaintiff/Appellant, pursuant to Sixth Circuit Rule 30(g), designates the following filings from the district court's electronic record:

| Doc. ID | Date | Description | Page ID |
|---|---|---|---|
| 1 | 05/01/2022 | Complaint | 1-11 |
| 8 | 05/23/2022 | Answer by Creely and Franke | 44-57 |
| 9 | 5/23/2022 | Answer by Board and Kopp | 58-72 |
| 36 | 10/15/2023 | Deposition Transcript of the Board pursuant to FRCP 30(b)(6) (witnesses were Lewis, Kopp, and Roberts), with exhibits thereto | 350-680 |
| 37 | 10/15/2023 | Notice of Conventional Filing | 681-682 |
| 38 | 10/15/2023 | Deposition of Kayla Creely with exhibits | 683-831 |
| 39 | 10/15/2023 | Deposition of Lori Franke with exhibits | 832-934 |
| 40 | 10/15/2023 | Deposition of Holly Lawson with exhibits | 935-1153 |
| 41 | 10/15/2023 | Deposition of Mark Kopp | 1154-1184 |
| 42 | 10/15/2023 | Deposition of Ashley Reid, with exhibits | 1185-1221 |
| 43 | 10/15/2023 | Deposition of Marvin Kelly, with exhibits | 1222-1269 |
| 44 | 10/15/2023 | Deposition of Jeff Abrams | 1270-1308 |
| 45 | 10/16/2023 | Deposition of Holly Atkins | 1309-1372 |
| 46-1 | 10/17/2023 | Wiest Declaration with photos | 1441-1453 |
| 46-2 | 10/17/2023 | BOE Interrogatory Responses | 1454-1464 |
| 95 | 06/13/2024 | Opinion and Order | 2011-2044 |
| 96 | 06/13/2024 | Judgment | 2045 |
| 98 | 07/11/2024 | Notice of Appeal | 2047 |

i